IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CREDIT UNION GROUP
ENTERPRISES LLC

                Plaintiff,

Vs.                                                                                  No. 06-4069-SAC

KANSAS DEPARTMENT OF CREDIT
UNIONS, and NATIONAL CREDIT
UNION ADMINISTRATION,

                Defendants.

MEMORANDUM AND ORDER

The defendant National Credit Union Administration ("NCUA") timely removed this action by the filing of its notice of removal. The plaintiff Credit Union Group Enterprise LLC ("CUGE") initiated this action in the District Court of Douglas County, Kansas, with the filing of a petition for judicial review of the agency actions taken by the Kansas Department of Credit Unions ("KDCU") and the NCUA. According to the petition, the KDCU placed the Credit Union Group, Inc. ("CUG") into a conservatorship and appointed itself as the conservator for the CUG and appointed the NCUA as its agent for the conservatorship. The petition alleges that the CUGE had three service contracts with the CUG which the NCUA repudiated as the conservator by its authority under 12 U.S.C. §

1787(c)(1). The CUGE claims that the NCUA in the exercise of this authority has failed to pay the CUGE the compensatory damages due under 12 U.S.C. § 1787(c)(3) and under the plain terms of the service contracts. The CUGE claims that the defendants "have erroneously interpreted or applied the law" in not paying the compensatory damages, that the defendants' refusal to pay is not supported by substantial evidence, and that their failure to pay "is also unreasonable, arbitrary and capricious." (Dk. 1-2, p. 5).

The NCUA filed its notice of removal asserting federal question jurisdiction in that the plaintiff's claims require the interpretation and application of federal law, 12 U.S.C. § 1787(c). Specifically, the plaintiff is seeking compensatory damages under this federal statute, and the NCUA disputes that the plaintiff's claimed damages are "actual direct compensatory damages" recoverable under 12 U.S.C. § 1787(c)(3)(A)(i). The NCUA's notice of removal further asserts federal question jurisdiction by reason of 12 U.S.C. § 1789(a)(2), which provides that "[a]ll suits of a civil nature at common law or in equity" in which it is a party "shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction." (Dks. 1-1, pp. 2-3).

**MOTION TO REMAND (Dk. 4)**

*Arguments*

2

The plaintiff CUGE has filed a motion to remand (Dk. 4) for lack of subject matter jurisdiction. The plaintiff does not challenge the notice of removal as procedurally defective.[1] The plaintiff describes its petition as seeking only judicial review under the Kansas Judicial Review Act ("KJRA"), K.S.A. §§ 77-601 *et seq.*, which limits the state court's jurisdiction to an appellate review of the state agency record, *see* K.S.A. 77-618. The plaintiff contends this appeal from a state administrative agency is not even a civil action under 28 U.S.C. §§ 1331 or 1332. The plaintiff concedes the interpretation of federal law is an element of the case, but asserts its relief is confined to the KJRA, and disaffirms bringing any claims under federal law. Finally, the plaintiff refutes the application of the jurisdictional provision of 12 U.S.C. § 1789(a)(2), arguing that it covers only the NCUA Board and that the suit here names the NCUA and not the Board which is a separate and distinct body pursuant to 12 U.S.C. § 1752(4).

In response, the defendant NCUA asserts federal question jurisdiction and federal statutory jurisdiction. First, the plaintiff's claim is based upon the

---

[1] In its reply brief, the plaintiff refers to the KDCU's argument that the KDCU did not join the notice of removal so removal is inappropriate and a remand is required. The absence of unanimous consent among the defendants is a procedural defect that "must be made within 30 days after the filing of the notice of removal." *See Farmland National Beef Packing Co. v. Stone Container Corp.*, 98 Fed. Appx. 752, 756, 2004 WL 830769 at *3 (10th Cir. Apr. 16, 2004). This procedural defect was not timely raised here.

3

NCUA's exercise of statutory authority as a conservator of a federally-insured credit union to "repudiate any contract" to which the credit union is a party upon the conservator's determination that the performance of the contract would be "burdensome" and its repudiation would "promote the orderly administration of the credit union's affairs." 12 U.S.C. § 1787(c)(1). Second, the plaintiff claims as damages those allowed by federal statute which limits the conservator's liability for the repudiation of a contract "to actual direct compensatory damages." 12 U.S.C. § 1787(c)(3). Finally, the NCUA claims direct federal court jurisdiction based on the terms of 12 U.S.C. § 1789(a)(2) and argues the statute empowers the NCUA as a federal agency to remove state court cases whether or not the Board itself is a named party.

*Removal Jurisdiction*

"It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005) (citations omitted). The removing defendant carries the burden of demonstrating that removal was proper and that the federal court has original jurisdiction. *See McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). It is well-settled that the presumption is "against

removal jurisdiction."  *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1289 (10th Cir. 2001) (citation omitted).  Doubtful cases must be resolved in favor of remand.  *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.), *cert. denied*, 516 U.S. 863 (1995).

A defendant may remove to federal court "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States."  28 U.S.C. § 1441(b).  Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."  28 U.S.C. § 1331.  """A case arises under federal law if its "well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of law.""" *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1232 (10th Cir. 2006) (quoting *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (quoting in turn *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983)), *cert. denied*, 514 U.S. 1109 (1995)).  To insure that the plaintiff remains the master of its claim, the well-pleaded complaint requires the federal question to appear on the face of the complaint.  *Nicodemus*, 440 F.3d at 1232.  And even when apparent, the federal question must be substantial as to deserve a resolution

in federal court, and the exercise of federal jurisdiction must be "consistent with congressional judgment about the sound division of labor between state and federal courts." *Id*.

*Analysis*

The plaintiff claims the NCUA as the conservator and the KDCU as the agency violated federal law, 12 U.S.C. § 1787(c), in repudiating the CUG's contracts with the plaintiff without acknowledging and paying the plaintiff's actual direct compensatory damages. There is no question that the plaintiff bases its claim for relief exclusively on the rights and remedies created under this federal statute. The plaintiff, however, has framed its suit not as a claim of relief independent of the state administrative agency proceedings but as a suit seeking only judicial review of what it describes as a state agency's determination that the plaintiff suffered no compensatory damages from the conservator's repudiation of the contracts. The plaintiff attributes this determination to the KDUC as a state agency who appointed itself as the conservator of the CUG and who also appointed as its agent in this role, the NCUA, who exercised its federal statutory authority as conservator. The plaintiff correctly observes that federal courts are generally without jurisdiction to review administrative decisions of state agencies. *See Wilder v. Oklahoma Dept. of Human Services*, 149 F.3d 1192, 1998 WL 255048,

*1 (10th Cir. 1998) (Table).

With the burden of proving removal jurisdiction on its shoulders, the NCUA does not challenge the plaintiff's self-characterization of its suit as exclusively seeking judicial review or the general rule foreclosing federal judicial review of state administrative agency action. The NCUA, however, does contend these circumstances are not relevant, for when the NCUA is a party to any civil suit then a federal district court has original jurisdiction pursuant to 12 U.S.C. § 1789(a)(2).[2] The plaintiff unpersuasively argues that a petition for judicial review does not qualify as either an "action" under § 1331 or an "action, suit or proceeding" under § 1789(a)(2).[3] *See High Country Citizens Alliance v. Clarke*, 454 F.3d 1177, 1198 (10th Cir. 2006) ("'Section 1331 confers federal question

---

[2]Section 1789(a) provides in relevant part:
"In carrying out the purposes of this subchapter, the Board may–
. . . .
(2) sue and be sued, complain and defend, in a court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Board shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy. The Board may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending . . . ."

[3]The Board may remove any "action, suit or proceeding from a State court to the United States district court." 1789(a)(2).

jurisdiction "on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate.' *Califano v. Sanders*, 430 U.S. 99, 105 (1977)."). By its express terms, § 1789(a)(2) confers original jurisdiction whenever the NCUA Board is a party to a civil suit and, if applicable here, would provide jurisdiction.

The plaintiff argues that § 1789(a)(2) should be read narrowly as applying only when the "Board" is specifically named as a party and not when just the agency, the "NCUA," is named, as in this case. The plaintiff rests its argument on the simple proposition that the definitions used in the Federal Credit Union Act, distinguish between "Administration" as the National Credit Union Administration and "Board" as the National Credit Union Administration Board. 12 U.S.C. § 1752(3) and (4).

The plaintiff does not cite any reported decision as holding that these definitions are to be strictly followed in applying § 1789(a)(2). Instead, courts repeatedly have recognized the applicability of this jurisdiction provision when the NCUA, but not the Board, was a named party. *See, e.g., Bruns v. National Credit Union Admin.*, 122 F.3d 1251, 1254 (9th Cir. 1997) ("Section 1789(a)(2) contains the NCUA's 'sue and be sued' clause."); *Putnam v. DeRosa*, 963 F.2d 480, 483 (1st Cir. 1992) (the NCUA as conservator removed case to federal court as this

"special statute" gave the NCUA "the right to bring this appeal in federal court."); *Simon v. Hollis*, 1997 WL 542721, at *10 (D. Kan. 1997) ("The act creating the NCUA has a sue and be sued clause."), *aff'd*, *Simon v. Northern Farms, Inc.*, 139 F.3d 912 (10th Cir. 1998) (Table) ; *Potomac Ins. Co. of Illinois v. NCUA a/k/a Nat. Credit Union Ass.*, 1996 WL 396100, at *1 (N.D. Ill. 1996)  (the NCUA removed an action to federal court pursuant to § 1789(a)(2)); *United States v. Rivieccio*, 661 F. Supp. 281, 286 (E.D.N.Y. 1987) (the NCUA "has the power to sue and be sued in its own right, 12 U.S.C. §  1789"); *cf. National Credit Union Admin. Bd. v. Fisher*, 2006 WL 618417 at *1 (M.D. Pa. 2006) (Considered the Board as the named party to be a federal agency in referring to § 1789(a)(2)).

The Act's distinction between the Board and the Administration is not critical in applying § 1789(a)(2) as shown not only in the case law above but in other terms of the Act.  The Board manages the NCUA and serves as the agency's administrative body.  12 U.S.C. §  1752a(a); *United States v. Smith*, 788 F.2d 663, 667 (10th Cir. 1986), *holding limited on other grds.*, *Zafiro v. United States*, 506 U.S. 534 (1993).  Subchapter two of the Act contains the sue and be sued provision for the Board but limits its force to "carrying out the purposes of this subchapter." 12 U.S.C. §  1789(a). Subchapter two addresses the Board's administration of the Share Insurance Fund and includes the very provisions at issue in this action, 12

9

U.S.C. § 1787, which concern the Board's powers and duties as a liquidating agent or conservator for an insured credit union. The conduct being challenged in this action involves authority statutorily given to the Board and carried out through its management of the Administration. Section 1789 plainly reflects Congress's intent that the power and protection afforded in suing and being sued and having original jurisdiction in federal court would accompany the exercise of other subchapter two authority. There are no provisions separately authorizing the NCUA to exercise subchapter two powers and duties or to sue or be sued in the exercise of the same. For these reasons, the exercise here of original jurisdiction under 12 U.S.C. § 1789(a)(2) is consonant with congressional intent, and the plaintiff's motion to remand is denied.

**MOTION TO DISMISS (Dk. 7)**

Arguing several different grounds, the KDCU seeks an order dismissing it from this action. (Dk. 8). The plaintiff opposes the KDCU's motion in all respects. (Dks. 5 and 12). The court will address the controlling issues and arguments.

*Eleventh Amendment*

As construed by the Supreme Court, the Eleventh Amendment precludes nonconsenting States from being "sued by private individuals in federal

court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). The Eleventh Amendment and the rule of state sovereign immunity protect not only the States but the "state agents and state instrumentalities." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). This rule of state sovereign immunity, however, is not absolute. "It may be overcome in three instances: (1) the state consents to suit; (2) Congress expressly abrogates the states' immunity; or (3) the citizen sues a state official pursuant to *Ex Parte Young*, 209 U.S. 123 (1908)." *Opala v. Watt*, 454 F.3d 1154, 1157 (10th Cir. 2006) (citations omitted). The burden of proving an Eleventh Amendment immunity defense rests with the defendant asserting it. *See Sanders ex rel. Rayl v. Kansas Dept. of Social and Rehabilitation Services*, 317 F. Supp. 2d 1233, 1241 (D. Kan. 2004); *Bland v. Kansas City, Kansas Community College*, 271 F. Supp. 2d 1280, 1286 (D. Kan. 2003); *Teichgraeber v. Memorial Union Corp. of Emporia State University*, 946 F. Supp. 900, 903 (D. Kan. 1996) (and cases cited therein).

The KDCU asserts Eleventh Amendment immunity from a federal suit for its actions taken pursuant to state law, denies any legislative waiver or consent to federal court jurisdiction, and denies joining in the NCUA's notice of removal. The plaintiff contends the Eleventh Amendment is not implicated, for the requested relief would come from the credit union held in conservatorship and not from the

state fisc. Alternatively, the plaintiff argues the KDCU in affirmatively appointing the NCUA as its agent for the conservatorship waived any applicable Eleventh Amendment immunity. The court understands the plaintiff's waiver argument is not based upon the KDCU's involvement in this federal court proceeding and any allegation that it voluntarily invoked federal court jurisdiction.

The plaintiff's first argument misapprehends the scope of the Eleventh Amendment defense. The Supreme Court often has emphasized:

> that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment. *See, e.g., Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2329, 72 L. Ed. 2d 694 (1982) ("It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought"). . . . . The Eleventh Amendment does not exist solely in order to "preven[t] federal-court judgments that must be paid out of a State's treasury," *Hess v. Port Authority Trans-Hudson Corporation*, 513 U.S. 30, 48, 115 S.Ct. 394, 404, 130 L. Ed. 2d 245 (1994); it also serves to avoid "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties," *Puerto Rico Aqueduct and Sewer Authority [v. Metcalf & Eddy, Inc.*], 506 U.S. [139], at 146, 113 S. Ct. [684], at 689 [(1993)] (internal quotation marks omitted).

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 58, 116 S. Ct. 1114, 1124 (1996). In short, "[s]overeign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit." *Federal Maritime Com'n v. South Carolina State Ports Authority*, 535 U.S. 743, 766, 122 S. Ct. 1864, 1877 (2002). The possibility that the state agency

12

would not look to state monies but to the credit union's assets in paying the plaintiff's claim for relief does not preclude the Eleventh Amendment's application here.

The plaintiff enjoys no better success with its waiver argument, for the strict standards that govern the waiver exception do not accommodate the constructive waiver being argued by the plaintiff. "[T]he test for determining a waiver of immunity is strict and . . . there must be an unequivocal intent to waive the immunity." *McLaughlin v. Board of Trustees of State Colleges of Colorado*, 215 F.3d 1168, 1170 (10th Cir. 2000) (internal citations and quotations omitted); *see Schrier v. University of Colorado*, 427 F.3d 1253, 1268 (10th Cir. 2005). "[A] state waives its immunity if it 'makes a clear declaration that it intends to submit itself to [a federal court's] jurisdiction.'" *MCI Telecommunications Corp. v. Public Service Com'n*, 216 F.3d 929, 935 (10th Cir. 2000) (quoting *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999)), *cert. denied*, 531 U.S. 1183 (2001). Put another way, a state's waiver must be "unequivocal." *College Sav. Bank*, 527 U.S. 680-81. "While an unequivocal expression of waiver may be effected by language in a state statute or constitutional provision, waiver may also result from a state's actions, specifically, its participation in a particular federal program." *Robinson v. Kansas*, 295 F.3d

13

1183, 1189 (10th Cir. 2002) (citations omitted), *cert. denied*, 539 U.S. 926 (2003); *see In re Innes*, 184 F.3d 1275, 1278 (10th Cir. 1999) ("[W]aiver may be found not only in the text of a state statute or constitution but also by examining the underlying facts and circumstances of the case."), *cert. denied*, 529 U.S. 1037 (2000).

The plaintiff cites no state statute, constitutional provision, or term of any agreement to prove that the State of Kansas or the KDCU has clearly and unequivocally declared its intent to submit itself to a federal court's jurisdiction in regard to these matters. The plaintiff asks the court to infer that KDCU waived its Eleventh Amendment immunity from its action in appointing the NCUA as its agent for the conservatorship. As authority for its position, the plaintiff relies exclusively on *In re Innes*, 184 F.3d 1275 (10th Cir. 1999), which held that Kansas State University had waived its Eleventh Amendment immunity through its agreement with the United States Department of Education to participate in the federal Perkins Loan Program which required the university "to undertake certain enumerated actions in federal bankruptcy court in the event of a claim of discharge filed by the student-borrower." 184 F.3d at 1284. The plaintiff contends that "[t]he appointment of a federal agency as its agent seems more clear a waiver than the *Innes* facts, especially if the Court finds that the federal agency has the power

14

to remove this matter to federal court." (Dk. 12, p. 7).

The Supreme Court in *College Savings Bank* overruled the constructive waiver doctrine of *Parden v. Terminal Ry. of Ala.*, 377 U.S. 184 (1964), as incompatible with the requirement that a state's waiver be express and unequivocal:

> The whole point of requiring a "clear declaration" *by the State* of its waiver is to be certain that the State in fact consents to suit. But there is little reason to assume actual consent based upon the State's mere presence in a field subject to congressional regulation. There is a fundamental difference between a State's expressing unequivocally that it waives its immunity and Congress's expressing unequivocally its intention that if the State takes certain action it shall be deemed to have waived that immunity. In the latter situation, the most that can be said with certainty is that the State has been put on the notice that Congress intends to subject it to suits brought by individuals. That is very far from concluding that *the State* made an "altogether voluntary" decision to waive its immunity." (citation omitted).

527 U.S. at 680-81. The Tenth Circuit in *Innes* found *College Savings Bank* distinguishable as the State had unequivocally expressed its waiver rather than constructively. 184 F.3d at 1280-81. The State had explicitly consented to participate in a federal program and to follow the program's requirements[4] that

---

[4]The University's contract explicitly obligated it to comply with the requirements of a particular federal regulation which included performing certain functions in the federal bankruptcy court. "The inclusion of this federal regulation in the contract so clearly binds KSU to suit in federal bankruptcy court that if the contract were enacted into legislation it would undoubtedly satisfy *Edelman's* waiver test." 184 F.3d at 1282. The Tenth Circuit observed that the contract notified the state agency that by participating in the program it was accepting

15

included participating in federal bankruptcy court proceedings. 184 F.3d at 1280-81. "Indeed, *College Savings Bank* reaffirms the proposition that a waiver may be found in a state's acceptance of federal funds with conditions attached." 184 F.3d at 1281.

Unlike the state agency in *Innes*, the KDCU has not unequivocally expressed its waiver to Eleventh Amendment immunity. There is nothing in its order appointing the NCUA as an agent that can be construed as constituting such a clear and unequivocal waiver. Indeed, there is nothing of record to show that KDCU reasonably expected and understood that its agency relationship with NCUA meant it had consented to participate in federal court proceedings stemming from the conservatorship. The KDCU was not informed by statute, regulation, or agreement that its appointment of the NCUA was expressly conditioned upon its waiver of Eleventh Amendment immunity or upon its consent to be subject to federal statutes or regulations requiring their participation in federal court. In short, the plaintiff points to nothing here that is comparable in meaning and scope to the unequivocal waiver found in *Innes*.

---

responsibilities and duties that had to be performed in federal bankruptcy court. *Id.* at 1283. The waiver in *Innes* was not the result of the KSU "merely 'engaging in activities and entering contracts subject to federal regulation'" but the result of it entering a contract that "unequivocally subjected itself to federal bankruptcy court jurisdiction." *Id.*

The holding and rationale expressed in *Innes* actually opposes finding a waiver here. The Tenth Circuit in *Innes* distinguished its holding in *Duke v. Department of Agriculture*, 131 F.3d 1407, 1408 (10th Cir. 1997), "that a state does not waive Eleventh Amendment immunity by merely 'engaging in activities and entering contracts subject to federal regulation.'" 184 F.3d at 1283. The panel explained this distinction:

> To the contrary, we think that KSU's affirmative entry into an agreement which explicitly subjects it to federal bankruptcy court proceedings is wholly different from the rule that the state does not waive immunity by merely agreeing to obey general federal laws, in participating in a federal program. This rule, which is based on the reality that agreeing to obey federal laws does not mean agreeing to be sued in federal court, is neither violated nor diminished by our conclusion today. In this case, KSU's entry into a contract which specifically requires it to abide by 34 C.F.R. § 674 means that KSU has equivocally subjected itself to federal bankruptcy court jurisdiction pursuant to § 674.49 for purposes of this Perkins Loan Program.

184 F.3d at 1283. This distinction applies with equal force here. Agreeing to a federal agency being its agent for the conservatorship is simply not the same as agreeing to be sued in federal court. To recognize here a waiver in the absence of any unequivocal, clear and voluntary declaration contradicts not only *Innes* but also *College Savings Bank* which rejected the notion "that a state waives its immunity by entering into arrangements controlled by federal law and reviewable only in federal court." *See Xechem Intern. v. Texas M.D. Anderson Cancer Center*,

17

382 F.3d 1324, 1329-30 (Fed. Cir. 2004).

IT IS THEREFORE ORDERED that the plaintiff CUGE's motion to remand (Dk. 4) for lack of subject matter jurisdiction is denied;

IT IS FURTHER ORDERED that the defendant KDUC's motion to dismiss (Dk. 7) is granted on Eleventh Amendment immunity grounds.

Dated this 27th day of September, 2006, Topeka, Kansas.

<u>s/ Sam A. Crow</u>
Sam A. Crow, U.S. District Senior Judge